NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2016-0268


THE STATE OF NEW HAMPSHIRE

v.

JAMES FOGG

Argued: April 11, 2017
Opinion Issued: August 1, 2017


Joseph A. Foster, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


LYNN, J. The defendant, James Fogg, appeals an order of the Superior Court (McNamara, J.) denying his motion to dismiss one of the two counts of aggravated driving while intoxicated (DWI) of which he was convicted. See RSA 265-A:3 (2014). On appeal, the defendant asserts that the trial court's interpretation of RSA 265-A:3 is incongruent with the statute's text and legislative history, and also violates his double jeopardy rights under the State and Federal Constitutions. We reverse in part, vacate in part, and remand.

I

The pertinent facts are as follows.  On November 11, 2014, at approximately 3:40 a.m., a vehicle operated by the defendant struck another vehicle while traveling on Hoit Road in Concord.  Both vehicles were destroyed.  Both occupants of the other vehicle sustained serious injuries; one of the occupants of the other vehicle suffered a stroke because of the accident and is permanently disabled as a result.

After the accident, police officers interviewed the defendant, who told them that he had fallen asleep while driving.  At the time, the defendant's pupils were constricted and he spoke very slowly; one officer trained in drug recognition suspected that the defendant was under the influence of drugs.  During a subsequent interview at Concord Hospital, the defendant nodded off.  The defendant admitted using marijuana prior to the accident, and a blood sample taken from him at the hospital tested positive for several drugs, including Xanax and Suboxone.

The State charged the defendant with two counts of aggravated DWI – one count for the injuries sustained by each occupant of the vehicle that the defendant hit.  The State and the defendant agreed that the trial would be held based upon an offer of proof, and that the trial court would render a decision based upon that offer of proof.  However, the defendant moved to dismiss one of the two counts of aggravated DWI, arguing that the language of the statute supported only one charge.  The trial court rejected his motion to dismiss and found him guilty on both counts.  Relying upon State v. Bailey, the trial court reasoned that RSA 265-A:3 suggests that the legislature intended that injury of more than one person in a collision caused by an intoxicated driver could result in multiple charges.  See State v. Bailey, 127 N.H. 811, 814 (1956).  This appeal followed.

II

On appeal, the defendant asserts that the trial court's interpretation of RSA 265-A:3 is unfaithful to the text of the statute and its legislative history, and violates the double jeopardy protections provided by the State and Federal Constitutions.  Conversely, the State argues that the trial court did not err by interpreting RSA 265-A:3 to allow for multiple aggravated DWI charges based solely upon the number of people injured.  The State asserts that both the plain text and legislative history of RSA 265-A:3 allow multiple counts of aggravated DWI to be brought in the event that multiple individuals suffer serious bodily injury in a vehicular collision caused by an intoxicated driver.

Although both parties and the trial court frame their discussion regarding the proper interpretation of RSA 265-A:3 in constitutional terms, we find that their arguments implicitly subsume the narrower issue of whether the

2

trial court erred in its statutory interpretation of RSA 265-A:3.  See Sup. Ct. R. 16(3)(b) ("The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein.").  Thus, because we decide constitutional questions only when necessary, see State v. Addison (Capital Murder), 165 N.H. 381, 418 (2013), we first consider the statutory construction issue.

When the question before us is one of statutory construction, our review is de novo.  See State v. Thiel, 160 N.H. 462, 465 (2010).  "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole."  Id. (quotation omitted).  "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Id.  "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  Id. (quotation omitted).  Furthermore, "[w]e construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result."  State v. Maxfield, 167 N.H. 677, 679 (2015) (quotation omitted).  "Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation."  Thiel, 160 N.H. at 465.

RSA 265-A:3 sets forth three requirements for an aggravated DWI offense: (1) driving or attempting to drive a vehicle upon a way; (2) while intoxicated; and (3) fulfilling any one of the four alternative conditions listed in RSA 265-A:3, I(a)-(d).  These four alternatives are: (a) driving more than 30 miles per hour in excess of the speed limit; (b) causing a motor vehicle collision that results in serious bodily injury to the driver or another; (c) attempting to elude a law enforcement officer by increasing speed, extinguishing headlamps, or abandoning the vehicle; and (d) carrying a passenger under the age of 16. See RSA 265-A:3, I.  Although we acknowledge that the issue is not completely free from doubt, considering the terms and structure of the statute as a whole, we conclude that the legislature intended the gravamen of the offense to be the operation of a vehicle while intoxicated, and accordingly conclude that only a single aggravated DWI charge arises from operating a vehicle on a particular occasion.  Our conclusion is based, in large measure, upon the incongruous outcomes that would result were we to construe the statute in the manner advocated by the State.

For example, under the State's view, an individual could face two aggravated DWI charges for attempting to elude law enforcement officers by increasing speed and then abandoning a vehicle, or by exceeding the speed limit by more than 30 miles per hour twice within the span of a few moments.  Similarly, an intoxicated driver carrying four high school companions could face four counts of aggravated DWI, even though he obviously drove the vehicle only once.  In the absence of a very clear indication to the contrary from statutory text — which we do not find in RSA 265-A:3 — we will not presume

3

that the legislature intended to impose such harsh and uneven consequences. For these same reasons, we conclude that the legislature did not intend the "unit of prosecution" under subsection I(b) of the statute to turn upon the number of persons suffering serious bodily injury in a single collision resulting from operation of a vehicle on a particular occasion.[1]

We note that our interpretation of the statute does not restrict the State's ability to achieve an enhanced punishment in situations in which that may be warranted. For example, in the circumstances presented here, it appears that, in addition to the charge of aggravated DWI, the State may have had the option of charging the defendant with a number of other offenses, including, perhaps, second degree assault, see RSA 631:2 (2016); simple assault, see RSA 631:2-a (2016); reckless driving, see RSA 265:79 (Supp. 2016); or vehicular assault, see RSA 265:79-a (Supp. 2016). The defendant concedes that, at least with respect to the foregoing assault offenses, the unit of prosecution is based upon each individual who is harmed by the assaultive conduct.

Of course, if the legislature disagrees with our decision today, it is free, within constitutional limits, to change the law as it sees fit. See State v. Carter, 167 N.H. 161, 170 (2014). Because we conclude that the trial court erred in interpreting RSA 265-A:3, we need not reach the State's or the defendant's constitutional arguments.

III

For the above reasons, we reverse the defendant's conviction on one of the aggravated DWI indictments. We remand to the trial court with instructions that it determine which conviction and sentence to vacate.

<u>Reversed in part; vacated in part; and remanded</u>.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.

---

[1] Because the issue is not before us, we have no need to consider whether multiple violations of RSA 265-A:3, I(b) would occur if, during the course of operation of a vehicle, an intoxicated driver were to cause two or more collisions, each of which resulted in serious bodily injury. For the same reason, we express no opinion on whether there might be multiple violations of RSA 265-A:3, I(a) in a situation in which, during an extended period of operation of a vehicle while intoxicated, the driver repeatedly exceeds the prima facie speed limit by more than 30 miles per hour or repeatedly takes steps to elude law enforcement.